IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHENR DISTRICT OF ALABAMA,
SOUTHERN DIVISION

| | | |
|---|---|---|
| **LESLIE Z. SALEEBY** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | **CASE** |
| | ) | **NUMBER: _____** |
| **HARTFORD LIFE AND** | ) | |
| **ACCIDENT INSURANCE** | ) | |
| **COMPANY** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

Comes now the Plaintiff, Leslie Z. Saleeby, and hereby files her Complaint against Hartford Life and Accident Insurance Company.

## PARTIES

1. The Plaintiff, Leslie Z. Saleeby ("Ms. Saleeby"), is an insured under Group Long Term Disability Plan for employees of Piedmont Natural Gas, identified as Group Insurance Policy 83162727 ("the Plan"), who has been improperly denied disability benefits under the Plan.

2. Defendant, Hartford Life and Accident Insurance Company ("Hartford"), is the Administrator of the Plan. Upon information and belief, Hartford is a foreign corporation incorporated in the State of Connecticut, which conducts business generally in the State of Alabama and specifically within this District.

1

## JURISDICTION AND VENUE

3. This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq. Plaintiff asserts claims for long term disability ("LTD") benefits, enforcement of ERISA rights and statutory violations of ERISA under 29 U.S.C. § 1132, specifically, Ms. Saleeby brings this action to recover benefits due to her pursuant to 29 U.S.C. §1132(a)(1)(B) and to enforce her rights under the Plan pursuant to 29 U.S.C. §1132(a)(3). This Court has subject matter jurisdiction under ERISA without respect to the amount in controversy or the citizenship of the parties. 29 U.S.C. §§ 1132(a), (e)(1) and (f) and 28 U.S.C. § 1131. Venue is proper in this district pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(b).

## INTRODUCTION

4. The Plaintiff in this case was subjected to improper claim handling procedures by Hartford as it exploited the shortcomings of ERISA as it relates to claims for "welfare" benefits to avoid paying Ms. Saleeby's valid claim for disability benefits. The traditionally held purpose of the ERISA statute is "to promote the interest of employees and their beneficiaries in employee benefits Plans." *Shaw v. Delta Airlines, Inc.*, 463 U.S. 85, 90 (1983). Ms. Saleeby, as an employee insured for disability, was supposed to be treated as a beneficiary by Hartford as a statutory fiduciary. Instead, Hartford has breached those duties and victimized Ms. Saleeby

by engaging in improper claim handling procedures. As described in more detail below, Hartford has clearly engaged in bad faith claim handling and Ms. Saleeby, at minimum, is entitled to *de novo* review and all relief that ERISA provides.

## STATEMENT OF FACTS

5. Ms. Saleeby is an insured for benefits under the Plan. Hartford is the administrator of the Plan. The Plan provides insureds, like Ms. Saleeby, LTD benefits and was in full force and effect at all times relevant to this Complaint.

6. At all relevant times, Ms. Saleeby was employed by Piedmont Natural Gas and was a covered participant in the Plan, as defined in 29 U.S.C. § 1002(7) and under the terms and conditions of the Plan.

7. Ms. Saleeby, a woman sixty-two (62) years of age, worked at Piedmont Natural Gas until her disabilities forced her to stop working on or about March 12, 2004.

8. Ms. Saleeby was employed by Piedmont Natural Gas as a Utility Technician.

9. Ms. Saleeby's medical disabilities include left distal humerus fracture with chronic post-traumatic pain, loss of mobility, the removal of the left eye and replacement with a prosthesis, and post-traumatic stress and anxiety. The symptoms of her impairments and the side effects of the medications and treatment prescribed render Ms. Saleeby unable to perform any occupation.

10. Following a serious car accident in 2004, Ms. Saleeby underwent several surgical procedures to address a left arm degloving injury with segmental bone loss and humerus fracture, including open reduction and internal fixation of the distal humerus on March 16, 2004; internal fixation of the distal humerus and olecranon with implantation of a cement spacer and repair of the triceps tendon on March 18, 2004; left elbow retained spacer exchanges on March 19, 2004; removal of external fixator on August 1, 2005; and ulnar and radial nerve neurolysis, excision of heterotopic bone, and plate fixation to address non-united humerus and radial and ulnar nerve palsy on November 16, 2005.

11. Ms. Saleeby was approved for LTD benefits from Hartford on October 6, 2004 and began receiving LTD benefits as of September 9, 2004.

12. On February 18, 2005, Ms. Saleeby was informed by the Social Security Administration that she was deemed totally disabled as of March 13, 2004 forward.

13. Initially, Ms. Saleeby received continuous LTD benefits from September 9, 2004 until September 8, 2006 because Hartford determined that she was unable to perform the material and substantial duties of any occupation, as defined under the Plan. Subsequently, Ms. Saleeby received continuous LTD benefits from September 9, 2006 until June 5, 2018 because Hartford determined that she was unable to engage in any occupation.

14. By letter dated June 5, 2018, Hartford wrongfully terminated Ms. Saleeby's LTD benefits beyond June 5, 2018.

15. The Plan at issue, as governed by ERISA and relied upon to deny Ms. Saleeby's LTD benefits states, in part:

> *Disability* or *Disabled* means that *You* satisfy the Occupation Qualifier or the Earnings Qualifier as defined below.
>
> **Occupation Qualifier**
> *Disability* means that during the Elimination Period and the following 12 months, *Injury* or *Sickness* causes physical or mental impairment to such a degree of severity that *You* are:
> 1) continuously unable to perform the *Material and Substantial Duties* of *Your Regular Occupation*; and
> 2) not *Gainfully Employed*.
>
> After the *LTD Monthly Benefit* has been payable for 12 months, *Disability* means that *Injury* or *Sickness* causes physical or mental impairment to such a degree of severity that *You* are:
>
> 1) continuously unable to engage in any occupation for which *You* are or become qualified by education, training or experience; and
> 2) not *Gainfully Employed*.
>
> **Earnings Qualifier**
> *You* may be considered *Disabled* during and after the *Elimination Period* in any month in which *You* are *Gainfully Employed*, if an *Injury* or *Sickness* is causing physical or mental impairment to such a degree of severity that *You* are unable to earn more than 80% of *Your Monthly Earnings* in any occupation for which *You* are qualified by education, training or experience.

16. Using this test of disability, Hartford found Ms. Saleeby disabled and approved her LTD benefits for nearly fourteen (14) years as Ms. Saleeby's chronic pain and loss of mobility prevented her from performing the material and substantial duty of any occupation.

5

17. During this nearly fourteen (14) year period in which Ms. Saleeby received her benefits, Hartford completed regular reviews which all found that she continued to meet the Plan's definition of disability.

18. However, on June 5, 2018, Hartford reversed the course it had maintained for nearly fourteen (14) years, terminating Ms. Saleeby's LTD benefits. The termination of LTD benefits was based at least in part upon the paid examination of Dr. Dr. Robert Elkins ("Dr. Elkins"), as well as surveillance reports ordered by Hartford.

19. At all relevant times, and prior to the termination of Ms. Saleeby's benefits, she was under the consistent care of Dr. David Ruch ("Dr. Ruch").

20. On July 13, 2016, Dr. Ruch provided an Attending Physician's Statement in which he noted that Ms. Saleeby was limited in her physical activities, including sitting, standing, walking, bending, kneeling, crouching, climbing, balancing, driving, fine and gross manipulation, and reaching. Dr. Ruch clarified that these restrictions and limitations were expected to endure for the duration of Ms. Saleeby's life.

21. Surveillance reports were issued to Hartford on May 26, 2017 and July 6, 2017 which included, cumulatively, approximately twelve (12) minutes of video documentation obtained between May 16, 2017 and June 30, 2017.

22. The surveillance reports issued to Hartford documented several days of

inactivity as well as the performance of activities consistent with the functional limitations upheld by Ms. Saleeby's treating physicians.

23. Ms. Saleeby attended an Independent Medical Examination with Dr. Elkins on December 5, 2017 where, despite noting that Ms. Saleeby "basically has a useless left upper extremity," required a cane due to her vision problems, and experienced balance problems, Dr. Elkins nevertheless claimed that the claimant was nevertheless capable of light work overall and light to moderate work with the right upper extremity.

24. An Employability Analysis Report was produced on May 23, 2018 and, utilizing only the restrictions and limitations assigned by Dr. Elkins and Hartford's medical case manager, found Ms. Saleeby to be capable of performing several occupations.

25. The May 23, 2018 Employability Analysis Report did not consider psychiatric or cognitive impairments, and thus did not consider Ms. Saleeby's ongoing cognitive issues related to her previous car accident and compounded by vision and balance problems and her medication side effects of brain fog.

26. At the time Hartford terminated the LTD benefits on June 5, 2018, it had no information, from Dr. Elkins' paid examination or otherwise, that altered in some significant way its previous decision maintained for nearly fourteen (14) years to pay LTD benefits to Ms. Saleeby.

27. At the time Hartford terminated the LTD benefits on June 5, 2018, it had no information, from Dr. Elkins' paid review or otherwise, that showed Ms. Saleeby's medical condition had improved.

28. Hartford's decision to terminate benefits after nearly fourteen (14) years goes against the precedent set by the 2018 decision of Paquin v. Prudential Ins. Co. of. Am. 2018 U.S. Dist. LEXIS 125231 (2018), which stated that "[a]n administrator is not preluded from denying a claimant benefits by virtue of the fact that it previously paid benefits if the administrator becomes aware of new information about the claimant's eligibility," however, "unless information available to an insurer alters in some significant way, the previous payment of benefits is a circumstance that must weigh against the propriety of an insurer's decision to discontinue those payments."

29. By and through counsel in a letter dated November 30, 2018, Ms. Saleeby appealed the termination of her LTD benefits. Ms. Saleeby included with her appeal letter additional medical records outlining the decline of her condition, as well as personal declarations.

30. Left elbow x-rays taken on August 1, 2018 demonstrated post-traumatic and postoperative changes of the humerus with exuberant heterotopic ossification similar to prior findings from 2014, as well as severe post-traumatic deformity of the olecranon-trochlear articulation and capitellum, probably persistent radiocapitellar

dislocation, and severe osteopenia about the humerus and elbow.

31. In support of her appeal, Ms. Saleeby submitted a declaration, pursuant to 28 U.S.C. § 1746, through which she outlined the effects of her disabling condition on her activities of daily living and her ability to return to work. Under penalty of perjury, Ms. Saleeby noted that, following her 2004 car accident, she experienced the loss of her left eye; vision problems in the right eye; pain and poor balance necessitating a can; the placement of a titanium plate in the eye socket and nasal cavity; left-sided numbness in the face, back, and fingers as well as the right knee; multiple surgeries to preserve the left arm and hand, including multiple muscle, skin, and bone grafts and surgical plates and screws; atrophy of the left hand; blood clot in the left thigh and blood flow problems to the left lower leg; and posttraumatic stress and anxiety.

32. In her declaration, Ms. Saleeby noted difficulty with tasks such as bathing, cooking, or laundry due to pain and loss of mobility, and she noted that "I can manage to do day to day tasks to care for myself, but I have to choose whatever is most important on any given day because if I try to do too much in one day, the result is either extreme physical pain or anxiety and panic – or both." Ms. Saleeby stated that "[n]ot only have I lost the physical use of parts of my body but at times, I feel like my dignity."

33. In support of Ms. Saleeby's disability, her friend, Cara-Lynn Ashley

Royal, submitted a declaration pursuant to 28 U.S.C. § 1746. In this declaration, Ms. Royal noted, under penalty of perjury, that Ms. Saleeby experienced chronic pain, poor vision and depth perception, balance problems, post-traumatic stress disorder, and anxiety attacks. Ms. Royal stated that "[t]here are very few things that she is still able to do the way she did before the accident."

34. Despite providing proof of her disability both before the termination of benefits and throughout the appeals process, Hartford refused to award Ms. Saleeby's LTD benefits and issued its final termination by letter dated February 13, 2019.

35. In the final termination letter dated February 13, 2019, Hartford acknowledged Ms. Saleeby's August 1, 2018 showing "that findings are similar and/or unchanged from previous study in May 2014," a period in which Ms. Saleeby was acknowledged by Hartford to remain disabled and unable to perform the material duties of any occupation.

36. As of this date, Ms. Saleeby has been denied benefits rightfully owed to her under the Plan.

37. Ms. Saleeby has met and continues to meet the Plan's definition of disabled.

38. Ms. Saleeby has exhausted any applicable administrative review procedures and her claim is ripe for judicial review pursuant to 29 U.S.C. § 1132.

39. Hartford's refusal to pay benefits has caused tremendous financial hardship on Ms. Saleeby.

## **STANDARD OF REVIEW**

40. A denial of benefits challenged under 29 U.S.C. § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit Plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the Plan.

41. When discretionary authority is clearly granted and the insurer of an ERISA plan also acts as a claims administrator, there is a structural or inherent conflict of interest that mandates a heightened arbitrary and capricious standard of review.

42. Upon information and belief, the Plan does not grant discretionary authority to determine eligibility for benefits to Hartford or to any other entity who may have adjudicated Ms. Saleeby's claim. Therefore, the Court should review Ms. Saleeby's claim for benefits under a *de novo* standard.

43. Upon information and belief, Hartford evaluated and paid all claims under the LTD Plan at issue, creating an inherent conflict of interest.

44. Hartford has failed to comply with the letter of the claims procedures outlined in ERISA and therefore Ms. Saleeby's claim for benefits should be reviewed by this Court under a *de novo* standard.

45. In the alternative, if the Court finds that Hartford is entitled to the heightened arbitrary and capricious standard of review, the termination of Plaintiff's benefits constitutes a clear abuse of discretion at Hartford's decision to deny Ms. Saleeby's LTD benefits was arbitrary and capricious.

### DEFENDANT'S WRONGFUL AND UNREASONABLE CONDUCT

46. Hartford has wrongfully denied LTD benefits to Ms. Saleeby, in violation of the policy provisions and ERISA, for the following reasons:

   (a) Ms. Saleeby is totally disabled, in that she is prevented from unable to engage in any occupation;

   (b) Ms. Saleeby is entitled to disability benefits under the terms of the Plan, as she meets the Plan's definition of disability and she has otherwise met the conditions precedent of the Plan for coverage and entitlement to benefits;

   (c) Hartford failed to accord proper weight to the evidence in the administrative record showing that Ms. Saleeby is totally disabled;

   (d) Hartford's interpretation of the definition of disability contained in the Plan is contrary to plain language of the Plan, unreasonable, arbitrary, capricious, and otherwise violated the standards required by ERISA;

   (e) Hartford wrongfully denied Ms. Saleeby a full, fair and impartial

review of her benefits claim pursuant to 29 C.F.R § 2560.503-1(h)(1), by ignoring the overwhelming weight and credibility of evidence submitted and instead behaved as an adversary, looking instead for less credible evidence of marginal significance to support its goal of denying her benefits claim;

(f) Hartford failed to give proper weight to Ms. Saleeby's own accounts regarding the debilitating effects of her pain;

(g) Hartford ignored the records and opinions of Ms. Saleeby's treating physicians which show that Ms. Saleeby is totally disabled, and instead based its decision to deny benefits on its internal review by Hartford staff members and its paid examiner, who had never treated Ms. Saleeby, who did not speak with her treating physicians about the nature of her disability, and who were not as qualified as Ms. Saleeby's treating physicians to formulate opinions regarding the nature and extent of her disability;

(h) Hartford failed to exercise reasonable flexibility in its claims review process to assure Ms. Saleeby a full, fair review, well-reasoned, and principled of her claim;

(i) Hartford administered Ms. Saleeby's claim for LTD benefits while acting under an inherent and substantial conflict of interest in that

Hartford served as both a fiduciary of and funding source for the Plan, and placed its own pecuniary interests above Ms. Saleeby's interests in wrongfully terminating her LTD benefits and failing to administer the Plan as an impartial decision-maker, free of such conflict of interest, would;

(j) Hartford made erroneous interpretations of some evidence in violation of its obligation to discharge its duties with care, prudence, skill, and diligence;

(k) Hartford acted in bad faith by deny Ms. Saleeby's claim based upon the inability of Hartford's paid examiner to find Ms. Saleeby disabled, and otherwise failed to administer the Plan honestly, fairly and in good faith, and to at all times act in Ms. Saleeby's best interests;

(l) Hartford terminated Ms. Saleeby's benefits without the support of any new information that altered in some significant way the previous decision over nearly fourteen (14) years to pay LTD benefits to Ms. Saleeby;

(m)   Hartford terminated Ms. Saleeby's benefits without the support of any new information that showed improvement in Ms. Saleeby's medical condition after nearly fourteen (14) years of paying LTD

benefits;

(n) Hartford failed to support the termination of benefits with substantial evidence;

(o) Hartford imposed a standard not required by the Plan's provisions, by requiring objective evidence of Ms. Saleeby's subjective medical conditions where such evidence cannot be reasonably provided;

(p) Hartford denied Ms. Saleeby's claim for a lack of objective medical evidence when Ms. Saleeby has provided ample subjective evidence of a disability and Hartford has neither identified any objective evidence that Ms. Saleeby could have supplied to support the claim.

(q) Hartford failed to consider Ms. Saleeby's non-exertional limitations caused by her disability, such as the side effects of her prescribed medication, her ability to regularly attend work, and the effect her disability has on her concentration, persistence and pace when performing the material duties of her occupation;

(r) Hartford's termination of Ms. Saleeby's LTD benefits failed to provide a detailed explanation and the basis of its disagreement with the opinions of Ms. Saleeby's treating physicians;

(s) Hartford's termination of Ms. Saleeby's LTD benefits failed to provide a detailed explanation and the basis of its disagreement with

the disability determination by the Social Security Administration;

(t) Hartford wrongfully denied Ms. Saleeby's LTD benefits in such other ways to be shown through discovery and/or hearing.

47. As a result of the foregoing, the relief to which Ms. Saleeby is entitled includes: (1) monthly LTD income benefits to Ms. Saleeby, (2) payment of back benefits from June 6, 2018 to the date of judgment, (3) pre-judgment interest, (4) equitable relief, including declaratory and injunctive relief, to redress Hartford's practices that are violative of the Plan and ERISA, and to enforce the terms of the Plan and ERISA, and (6) an award of attorney's fees and costs pursuant to 29 U.S.C. § 1132(g).

## CAUSES OF ACTION

### COUNT ONE
### ERISA (Claim for Benefits Owed under Plan)

48. Plaintiff hereby incorporates by reference each and every fact as if it was restated herein.

49. At all times relevant to this action, Ms. Saleeby was a participant of the Plan underwritten by Hartford and issued to Piedmont Natural Gas, and was eligible to receive disability benefits under the Plan.

50. As more fully described above, the termination and refusal to pay Ms. Saleeby's benefits under the Plan for the period from at least on or about June 6, 2018 through the present constitutes a breach of Defendant's obligations under the

Plan and ERISA. The decision to deny benefits to Ms. Saleeby constitutes an abuse of discretion as the decision was not reasonable and was not based on substantial evidence.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays the Court for the following:

1. A judgment ordering the applicable standard of review in this case is *de novo*;

2. A judgment ordering that by a preponderance of the evidence, the Defendant has breached its fiduciary duty to the Plaintiff by wrongfully denying her LTD benefits owed to her through the Plan;

3. In the alternative, if the Court determines that the applicable standard of review is the heightened arbitrary and capricious standard, the Court may take and review the records of Defendant and any other evidence that it deems necessary to conduct an adequate arbitrary and capricious review and enter a judgment that Defendant's decision to wrongfully deny Plaintiff's LTD benefits was unreasonable, arbitrary and capricious, and unsupported by substantial evidence;

4. Declaratory and injunctive relief, finding that Defendant violated the terms of the Plan and Plaintiff's rights thereunder by terminating Ms. Saleeby's LTD benefits, that Ms. Saleeby is entitled to a continuation of future LTD benefits form Defendant pursuant to the Plan;

5. Declaratory and injunctive relief, finding that Defendant breached its fiduciary duties to Plaintiff; enjoining Defendant from further violations of its fiduciary duties; and directing Defendant to take all actions necessary to administer the Plan in accordance with the terms and provisions thereof and Defendant's fiduciary and other obligations arising under ERISA;

6. A judgment ordering Defendant to pay Ms. Saleeby's LTD benefits from June 6, 2018 through the date judgment is entered herein, together with pre-judgment interest on each and every such monthly payment through the date of judgment;

7. An award of attorney's fees and costs pursuant to 29 U.S.C. § 1132(g);

8. For such other and further relief as the Court deems just, fit and proper.

Respectfully submitted this the 24th day of August, 2021.

    */s/ Peter H. Burke*_____
Peter H. Burke (ASB-1992-K74P)
pburke@burkeharvey.com
BURKE HARVEY, LLC
3535 Grandview Parkway, Suite 100
Birmingham, Alabama 35243
Phone: 205-930-9091
Fax: 205-930-9054
*Attorney for Plaintiff Leslie Saleeby*

**PLEASE SERVE DEFENDANT BY CERTIFIED MAIL AT:**

Hartford Life and Accident Insurance Company
c/o CT Corporation System
2 North Jackson Street
Suite 605
Montgomery, AL 36104